UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

REUBEN AVENT,

                        Plaintiff,
                                                9:07-CV-1135
v.                                              (DHN/GHL)

BRIAN FISHER, *et al.*,

                        Defendants.
_____

APPEARANCES:                                    OF COUNSEL:

REUBEN AVENT, 01-A-5796
   Plaintiff, *Pro Se*
Auburn Correctional Facility
P.O. Box 618
Auburn, NY 13021

GEORGE H. LOWE, United States Magistrate Judge

## **REPORT-RECOMMENDATION**

      This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has

been referred to me by the Honorable David N. Hurd, United States District Judge, to hear and

determine all pretrial matters (of a non-dispositive nature) and issue report-recommendations on

all dispositive matters before the Court, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).

For the reasons discussed below, I recommend that Plaintiff's *in forma pauperis* status be

revoked as having been improvidently granted, and that his Complaint be dismissed if, within

thirty (30) days of the date of the Court's final Order on this Report-Recommendation, he has not

paid the Court's filing fee of three hundred fifty dollars ($350).

I.      **RELEVANT PROCEDURAL BACKGROUND**

In his *pro se* Complaint, Plaintiff asserts a broad array of claims–spanning several years and correctional facilities–against former-Governor Eliot Spitzer as well as thirty-eight (38) employees of the New York State Department of Correctional Services.  (*See generally* Dkt. No. 1 [Plf.'s Compl.].)  Those claims include, but are not limited to, claims that Plaintiff was denied access to the courts, retaliated against for exercising his constitutional rights, denied adequate and sufficient food, and denied due process in the course of grievance and disciplinary proceedings.  (*Id*.)

Shortly after he filed his Complaint in this action in October of 2007, Plaintiff applied for, and was granted, *in forma pauperis* status.  (Dkt. Nos. 2, 3, 4.)  No doubt because the full extent of Plaintiff's litigation history outside of this District was not known to the Court at the time, the Order granting him that status did not discuss Plaintiff's accumulation of "strikes" for purposes of the federal *in forma pauperis* statute, 28 U.S.C. § 1915(g).  (Dkt. No. 4, at 2, n.1.)

Subsequently, on December 17, 2007, the Court granted Plaintiff's request for an extension of time–until February 1, 2008–to provide the Clerk's Office with thirty-nine copies of his forty-two-page Complaint, along with completed and signed USM-285 Forms.  (Dkt. No. 6, at 3.)  On January 18, 2008, rather than request an additional extension of the February 1, 2008, deadline, Plaintiff filed a Notice of Appeal to the Second Circuit, apparently complaining that he had to make any copies of his Complaint at all.  (Dkt. No. 7.)  On August 28, 2008, the Second Circuit dismissed Plaintiff's appeal.  (Dkt. No. 12.)

Subsequently, in reviewing the file in this action in order to determine how to best proceed following the Second Circuit's Order of Dismissal, I obtained reason to believe that

Plaintiff had filed several cases outside of this District, which were dismissed based on his failure to state a claim upon which relief might be granted, or a finding of frivolousness.

## II.     DISCUSSION

Under the so-called "Three Strikes Rule" set forth in the federal statute governing *in forma pauperis* proceedings,

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).  It is well established that the power of a federal district court to invoke this rule is not limited to the outset of a litigation but extends all throughout the pendency of the proceeding.  In other words, a federal district court has the authority to rescind, revoke, and/or vacate the *in forma pauperis* status that it has previously bestowed upon a plaintiff, if the court discovers that the status had been improvidently granted.[1]

---

[1]      *See*, *e.g.*, *Muhammad v. Healy*, 08-CV-2825, 2008 WL 2945350, at *1-2 (S.D.N.Y. July 28, 2008); *Jackson v. McPartland*, 06-CV-6524, 2008 WL 619364, at *1-2 (W.D.N.Y. March 4, 2008); *Chavis v. Curlee*, 06-CV-0049, at *1 (N.D.N.Y. filed Feb. 21, 2008) (Kahn, J.); *Welch v. Selsky*, 06-CV-0812, 2008 WL 238553, at *1 (N.D.N.Y. filed Jan. 28, 2008) (Kahn, J.); *Gamble v. Maynard*, 06-CV-1543, 2008 WL 150364, at *1 (N.D.N.Y. Jan. 14, 2008) (Hurd, J.); *Nelson v. Lee*, 05-CV-1096, 2007 WL 4333776, at *1 (N.D.N.Y. Dec. 5, 2007) (Mordue, C.J.); *Eady v. Lappin*, 05-CV-0824, 2007 WL 1531879, at *1 & n.1 (N.D.N.Y. May 22, 2007) (Mordue, C.J.); *Polanco v. Hopkins,* 03-CV-6661, 2007 WL 914023, at *6 (W.D.N.Y. March 23, 2007); *Gill v. Pidlypchak*, 02-CV-1460, 2006 WL 3751340, at *5 (N.D.N.Y. Dec. 19, 2006) (Scullin, J.); *Polanco v. Burge*, 05-CV-0651, 2006 WL 2806574, at *2 (N.D.N.Y. Sept. 28, 2006) (Kahn, J.); *Green v. Morse*, 97-CV-6533, 2006 WL 2128609, at *1-4 (W.D.N.Y. May 26, 2006); *Demos v. John Doe*, 118 F. Supp.2d 172, 174 (D. Conn. 2000); *McFadden v. Parpan*, 16 F. Supp.2d 246, 247 (E.D.N.Y. 1998).

3

### A.     Accumulation of Strikes

After carefully reviewing Plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service, I have determined that, as of October 22, 2007,[2] he had acquired at least five "strikes" for purposes of 28 U.S.C. § 1915(g): (1) *Avent v. Phillips*, 02-CV-5315, Order of Dismissal (S.D.N.Y. filed July 11, 2002) (dismissed *sua sponte* for failure to state a claim; certifying that appeal would not be taken in good faith); (2) *Avent v. Phillips*, No. 02-0226, Order of Dismissal (2d Cir. filed Feb. 6, 2003) (dismissed based on frivolousness); (3) *Avent v. Dellicarri*, 02-CV-6036, Order of Dismissal (S.D.N.Y. filed July 30, 2002) (dismissed *sua sponte* for failure to state a claim; certifying that appeal would not be taken in good faith); (4) *Avent v. Valvo*, 02-CV-6037, Order of Dismissal (S.D.N.Y. filed July 30, 2002) (dismissed *sua sponte* for failure to state a claim; certifying that appeal would not be taken in good faith); and (5) *Avent v. Valvo*, No. 02-0252, Order of Dismissal (2d Cir. filed Feb. 6, 2003) (dismissed based on frivolousness).

### B.     Unavailability of Imminent Danger Exception

I also find that Plaintiff has not shown that he was "under imminent danger of serious physical injury" at the time he brought this action, sufficient to qualify for an exception to the "Three Strikes Rule."  *See* 28 U.S.C. § 1915(g) ("In no event shall a prisoner bring a civil action . . . if the prisoner has, on 3 or more prior occasions, . . . brought an action or appeal . . . that was

---

[2]     Under the "prison mailbox rule," the date on which a prisoner has "brought" or filed an action is deemed to be the date that the prisoner is presumed to have handed his complaint to a prison guard for *mailing*, which is the date that the complaint was *signed*.  *See Shaw v. Superint., Attica Corr. Facility*, 03-CV-0610, 2007 WL 951459, at *3 n.3 (N.D.N.Y. March 28, 2007) (McCurn, J.) (habeas corpus proceeding) [citations omitted]; *Garraway v. Broome County, N.Y.*, 03-CV-0681, 2006 WL 931729, at *3-4 (N.D.N.Y. Apr. 7, 2006) (McAvoy, J.) (prisoner civil rights action) [citation omitted].

dismissed on the grounds that it is frivolous, malicious, or fails to state a claim . . . *unless the prisoner is under imminent danger of serious physical injury*.") [emphasis added].

Because 28 U.S.C. § 1915(g) creates an exception for prisoners who are under imminent danger of serious physical injury when they "bring a civil action," the imminent-danger exception applies only when such danger exists *at the time the action is brought*, i.e., at the time the complaint is filed.  *See Malik v. McGinnis*, 293 F.3d 559, 562-63 (2d Cir. 2002), *accord*, *Polanco v. Hopkins*, No. 07-1739, 2007 WL 4258724, at *2-3 (2d Cir. Dec. 6, 2007) (declining to overturn the Second Circuit's time-of-filing interpretation set forth in *Malik v. McGinnis*). Moreover, when determining whether a prisoner has qualified for the "imminent danger" exception, courts look at the non-conclusory allegations in the plaintiff's complaint.[3]

Here, Plaintiff's Complaint does not allege facts plausibly suggesting that, at the time that

---

[3]    *Johnson v. Connolly*, 07-CV-0158, 2008 WL 724167, at *9 & n.18 (N.D.N.Y. March 17, 2008) (on *de novo* review, adopting Report-Recommendation of Lowe, M.J., recommending revocation of plaintiff's *in forma pauperis* status due to "Three Strikes Rule" in part because plaintiff had not, in his complaint, asserted non-conclusory allegations that he was in imminent danger of serious physical injury) [citations omitted]; *Welch v. Fisher*, 07-CV-0929, 2007 WL 3231992, at *1-2 (N.D.N.Y. Oct. 30, 2007) (McAvoy, J.) (concluding that plaintiff had failed to allege imminent danger of serious physical injury) [citations omitted]; *see also Abdrews v. Cervantes*, 493 F.3d 1047, 1053 (9th Cir. 2007) ("[A]ll [circuits] maintain a singular focus on the facts alleged in the complaint in deciding whether a prisoner faced the requisite harm.") [collecting cases]; *Ibrahim v. Dist. of Columbia*, 463 F.3d 3, 6 (D.C. Cir. 2006) ("In determining whether he qualifies [for the 'imminent danger' exception], we look to the complaint . . . ."); *Brown v. Johnson*, 387 F.3d 1344, 1350 (11th Cir. 2004) ( "[T]he issue [under § 1915(g)] is whether his complaint, as a whole, alleges imminent danger of serious physical injury."); *Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003) ("Before denying leave to proceed IFP, courts must review a frequent filer's well-pled allegations to ensure that the prisoner is not in imminent danger.") [citation omitted]; *Rivera v. Allin*, 144 F.3d 719, 726 (11th Cir. 1998) ("Prior to denying leave to proceed IFP, courts must review a frequent filer prisoner's well-pled allegations to ensure that the prisoner is not under imminent danger of serious physical injury.") [internal quotation marks and citation omitted], *abrogated on other grounds*, *Jones v. Block*, 127 S. Ct. 910 (2007).

he signed his Complaint (October 22, 2007), he was under imminent danger of serious physical injury.  Even when construed with the utmost of special leniency,[4] the closest Plaintiff's Complaint comes to alleging that he was under an imminent threat of serious physical injury at the time he brought the action, October 22, 2007, is when it alleges as follows:

    1.        On or before June 9, *2005*, unidentified Correctional Officers at Coxsackie Correctional Facility "sen[t] inmates to assault [him] which ended [in his] refusal to come out of his cell because officers additionally intended to assault him" (Dkt. No. 1, ¶ 7.d. [Plf.'s Compl.]);

    2.        At some point between June 9, 2005, and July 26, 2007, he was incarcerated at Clinton Correctional Facility, Mid-State Correctional Facility, and Upstate Correctional Facility, at each of which he was threatened and/or harassed by other inmates, including his "cell bunkies" (*id*. at ¶¶ 1-2, 7.a.);

    3.        On July 26, 2007, he was transferred back to Coxsackie Correctional Facility (*id*. at ¶ 7.a.);

    4.        On September 27, 2007, a fellow inmate told Plaintiff that Correctional Officer Bogardes had offered a fellow inmate named Williams contraband if he would "take care" of Plaintiff, after which correctional officers would "step in and finish the job" (*id*. at ¶ 7.h.); and

    5.        On September 28, 2007, while correctional officers were attempting to stop a fight between Plaintiff and Inmate Williams, Plaintiff was punched in the face by Correctional Officer Beault, which resulted in Plaintiff's suffering a broken nose (*id*. at ¶¶ 7.l-7.q.).

---

    [4]      Given Plaintiff's extraordinary litigation experience, I doubt that he deserves the full measure of special leniency normally afforded to *pro se* litigants because of their inexperience.  However, I will continue to afford him such special leniency because I do not believe that doing so makes any difference to the outcome of this Report-Recommendation.

Specifically, with regard to this last fact, Plaintiff alleges as follows:

>Mr. Williams began unusual[] horseplay[] with Avent and call[ed] him names.  Avent did block [Mr. Williams'] physical blows and sensed Mr. Williams['] unusual aggression.  When it had got to[o] far[,] Avent stated to Mr. Williams[,] "[D]on't touch me."  Mr. Williams then started making offensive jokes, stating how he could do physical damage to Avent.  Avent remained silent and backed away from Mr. Williams.  A little time later Avent asked C.O. Knopp if he could return to his cell . . . .  C.O. Knopp said, Yes . . . .
>
>Plaintiff went to his cell and came back, attempting to walk pas[t] Mr. Williams, who stretched out his hands and grabbed Avent [,] handing him a [piece of] candy.  Plaintiff broke loose and told Mr. Williams[,] "Stop playing and touching me" and "[L]eave me alone."  As Avent went next to a C.O. trainee (OJT) and put his back against the wall[,] Mr. Williams did walk over in a threatening manner[,] saying, "[A]nd if I don't[,] what you gonna do?" and began to strike and choke Avent, compelling [him] to defend himself.  During this attack, several officers there only told Avent to stop fighting and not Avent's attacker who kept on swinging and holding Avent so he could not get away without assault.  Avent did ask Mr. Williams to let him go, [and to] stop fighting and [that if he did Avent would] stop fighting.  Mr. Williams said[,] "[H]ell, no."
>
>Avent kept pulling away from Mr. Williams, who held Avent's shirt and then C.O. Bogardes and other officers jumped on Mr. Williams' back to take him down to the floor.  Mr. Williams still attempted to attack Avent by crawling and reaching for Avent[,] fighting off officers.  Avent stood still with his hands at his sides as seconds later he was grabbed, pushed to the wall, kneed in the groin and then[,] while restrained[,] elbowed and punched in the face by Officer Beault.  As a result of that blow Plaintiff asserts his nose is broke[n] again as well as both his hands and finger and other facial damage [sic].
>
>As a result of Beault's blows and Hobart's twisting of his left hand finger, with both hands restrained[,] [Avent] yelled[,] "Why da f*** you hitting me for?"  Beault stated [that it was] because he [had] told Avent to stop fighting (while he was being attacked) and he didn't.  Avent stated[,] "[H]ow can I, when I am being attacked?"  Avent was then taken to [the] facility infirmary where he was asked by [N]urse K. Georgrosio[,] ["W]hat happened?["]  Avent did tell her the above[-stated events] and the fact that he was hit in the nose by the COS and that he th[ought] his nose [was] broke[n] again. . . .
>
>. . . [T]he following Monday, Avent put in for sickcall[,] stating

> [that] his hands were swollen and [that] he had a bleeding and hurting
> nose but still didn't see anyone until he wrote . . . [a judge] about the
> situation . . . [on or about] Oct. 7, 2007. . . .
>
> Avent then received disciplinary reports [charging him with
> fighting] . . . . [Upon his disciplinary conviction, Plaintiff received a
> disciplinary sentence of] 6 months [in] SHU. . . .

(*Id.*)

I am unable to find that these factual allegations, even when construed with the utmost of

special leniency and assumed to be true, plausibly suggest that, at the time Plaintiff filed this

action (on October 22, 2007), he was under "imminent danger of serious physical injury."

As the Second Circuit has recognized, by using the term "imminent," Congress "indicated that it

wanted to include a safety valve for the 'three strikes' rule to prevent impending harms, not those

harms that had already occurred." *Malik v. McGinnis*, 293 F.3d 559, 563 (2d Cir. 2002) [citation

omitted]. For example, last year the Second Circuit affirmed a district court's finding a lack of

imminent danger under circumstances involving a temporal disconnect between the physical

injury and the time of filing of the action. *See Polanco v. Hopkins*, No. 07-1739, 2007 WL

4258724 (2d Cir. Dec. 6, 2007).

Specifically, in *Polanco v. Hopkins*, the plaintiff alleged that (1) defendants were

effectively forcing him to breathe "black mold" in a prison shower, exacerbating both his AIDS

condition and his Hepatitis-B condition, and (2) defendants had deprived him of hygienic items

and a proper diet while in the prison SHU, causing him to lose weight.[5] With respect to the first

claim (regarding the moldy shower), the Western District of New York ruled that the plaintiff

had not alleged facts plausibly suggesting that he was in imminent danger of serious physical

---

[5]      *Polanco  v. Hopkins*, 03-CV-6661, 2007 WL 914023, at *3-5 (W.D.N.Y. March
23, 2007).

injury *at the time be "brought" the action*, because he filed the action on December 29, 2003 (while he was incarcerated at Auburn C.F.) long after he had been subjected to the moldy shower on October 10, 2002 (while he was incarcerated at Elmira C.F.).[6]  With respect to the second claim (regarding his proper hygiene and diet while in SHU), the Western District ruled there was no "imminent danger" alleged due to a similar temporal disconnect between the date of the injury (on March 25-27, 2003) and the date of the filing (on December 29, 2003).[7]  On appeal, the Second Circuit agreed, affirming the Western District's ruling.  *See Polanco v. Hopkins*, No. 07-1739, 2007 WL 4258724, at *2 (2d Cir. Dec. 6, 2007) ("Nor did the District Court err in determining that Polanco's 'allegations cannot support a determination that he was in imminent danger' of serious physical injury with respect to his claims relating to the health risks associated with his exposure to mold or to his claim of unjust discipline.'").

Applying a similar sort of reasoning, district courts outside of this Circuit have held that the mere fact that multiple physical assaults have occurred in the past does not, in and of itself, constitute an "imminent danger" on the date of filing.  *See, e.g., Renoir v. Brown*, 07-CV-0166, 2007 WL 1052477, at *1 & n.2 (W.D. Va. Apr. 5, 2007) (concluding that prisoner did not sufficiently allege that he was under imminent danger of serious physical injury when he dated, and thus "filed," his complaint in late March 2007 simply by alleging in that complaint that he had been subjected to gang rapes in that prison in December 2006 and January 2007).

Granted, it is conceivable that the passing of less than a month since a physical assault, coupled with a specific threat of another such assault in the near future, may suffice to allege an

---

[6]     *Polanco*, 2007 WL 914023, at *3-4.

[7]     *Id*. at *5 & n.1.

"imminent danger" on the date of filing.  However, unless the prospect of such a future assault is

so specific and/or likely as to be deemed *real*, such an allegation will not suffice to allege an

"imminent danger" on the date of filing.  *See Abdul-Akbar v. McKelvie*, 239 F.3d 307, 311, 315,

n.1 (3d Cir. 2001) (allegation that asthmatic plaintiff had been intentionally sprayed with pepper

gas by guards on or about January 9, 1998, and subsequently refused medical care, coupled with

"continuing harassment [and plots] to hurt or kill [him]," did not constitute an allegation that

plaintiff was in "imminent danger" as of the date of filing of plaintiff's complaint, which occurred

on February 10, 1998); *Robinson v. Mawer*, 08-CV-0353, 2008 WL 1986239, at *2 (W.D. Mich.

May 2, 2008) (allegation that plaintiff had been assaulted by prison guards on April 8, 2008,

coupled with allegation that plaintiff was not able to "defend himself" from the prospect of future

such assaults, did not constitute an allegation that plaintiff was in "imminent danger" as of the

date of filing of plaintiff's complaint, which occurred when complaint was signed three days

later, on April 11, 2008).[8]

 This point of law is consistent with the rather well-established rule that "[t]he imminent

danger claimed by the inmate . . . must be real, and not merely speculative or hypothetical."

*Nelson v. Nesmith*, 06-CV-1177, 2008 WL 3836387, at *5 (N.D.N.Y. Aug. 13, 2008) (McAvoy,

J., adopting Report-Recommendation of Peebles, M.J.) [citation omitted]; *accord, Welch v.

Selsky*, 06-CV-0812, 2008 WL 238553, at *5 (N.D.N.Y. Jan 28, 2008) (Kahn, J., adopting

Report-Recommendation of Peebles, M.J.) [citation omitted]; *Gamble v. Maynard*, 06-CV-1543,

2008 WL 150364, at *4 (N.D.N.Y. Jan. 14, 2008) (Hurd, J., adopting Report-Recommendation

---

[8]     *See Robinson v. Mawer*, 08-CV-0353, Complaint, at 4 (W.D. Mich. filed Apr. 11,
2008) (signed by plaintiff on Apr. 17, 2008).

of Peebles, M.J.) [citation omitted].

It should be noted that this rule holds true even if the danger (about which the plaintiff is speculating) is as serious as one of physical assault.  *See Robinson*, 2008 WL 1986239, at *3 ("Allegations of a danger that is speculative in nature, such as Plaintiff's assertion that he may be assaulted in the future, will not suffice . . . .") [citation omitted].  This rule also holds true even if the reason that the plaintiff speculates he is in danger of future harm is a pattern of past harassment.  *See Taylor v. Walker*, 07-CV-0706, 2007 WL 4150345, at *1 (S.D. Ill. Nov. 20, 2007) ("While Plaintiff has alleged that he suffers from continuing harassment and retaliation at the hands of prison staff, these acts of harassment and retaliation do not show that at the time Plaintiff filed his complaint that Plaintiff is under imminent danger of serious physical injury.").

For all of these reasons, I find that Plaintiff's allegations regarding the assault on September 28, 2007, concerned a physical injury that had already occurred, rather than a danger that was "imminent," on the date of filing (October 22, 2007).

I note that, even if I were to find that the assault on September 28, 2007, coupled with the pattern of prior harassment against Plaintiff, constituted some sort of vague danger of future harm, I would find that Plaintiff's allegation that he was placed in S.H.U. (before October 22, 2007) for a sentence of six months plausibly suggests that this danger was drastically reduced, if not outright eliminated.  In all probability, such placement would protect him from fellow inmates such as Williams.  *See Medberry v. Butler*, 185 F.3d 1189, 1191-93 (11th Cir. 1999) (finding no imminent danger where plaintiff had been placed in administrative segregation following physical assaults by fellow inmates before he filed his complaint); *Robinson v. Crawford*, 07-CV-4216, 2008 WL 544968, at *1-2 (W.D. Mo. Feb. 27, 2008) (plaintiff, who

11

claimed he was being "harassed" by other inmates, did not face "imminent danger of serious physical injury" at time of filing because, by that time, he had been placed in administrative segregation where he was "safe").  Moreover, it would also presumably protect him from the offending correctional officers, Bogardes, Beault and Hobart, who are not alleged to be assigned to the Coxsackie Correctional Facility Special Housing Unit.  (*See generally* Dkt. No. 1 [Plf.'s Compl.].)[9]

       **ACCORDINGLY**, it is

       **RECOMMENDED** that Plaintiff's *in forma pauperis* status be __**REVOKED**__ as having been improvidently granted, and that his Complaint be __**DISMISSED**__ if, within thirty (30) days of the date of the Court's final Order on this Report-Recommendation, he has not paid the Court's filing fee of three hundred fifty dollars ($350).

       **BE ADVISED that any objections to this Report-Recommendation must be filed with the Clerk of this Court within TEN (10) WORKING DAYS, PLUS THREE (3) CALENDAR DAYS (*see* Fed. R. Civ. P. 6[d]), from the date of this Report-Recommendation**.  *See* 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), Local Rule 72.1(c), and Fed. R. Civ. P. 6(a)(2).

       **BE ALSO ADVISED that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material that could have been,**

---

[9]     By analogy, it is well accepted that a transfer to another facility would afford an inmate such protection.  *See, e.g., Gamble*, 2008 WL 150364, at *5 ("While plaintiff's complaint intimates that the matter was not an isolated incident [of assault by correctional officers], there is nothing in his complaint, particularly in view of the fact that he is no longer incarcerated at the facility at which the alleged assaults occurred, having since been transferred to the Southport Correctional Facility, to demonstrate that he is in imminent danger of serious physical injury.").

but was not, presented to the Magistrate Judge in the first instance.[10]

BE ALSO ADVISED that the failure to file timely objections to this Report-Recommendation will PRECLUDE LATER APPELLATE REVIEW of any Order of judgment that will be entered. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of H.H.S.*, 892 F.2d 15 [2d Cir. 1989]).

Dated: September 30, 2008
      Syracuse, New York

George H. Lowe
United States Magistrate Judge

---

[10]    *See, e.g., Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir. 1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40 n.3 (2d Cir. 1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *Alexander v. Evans,* 88-CV-5309, 1993 WL 427409, at *18, n.8 (S.D.N.Y. Sept. 30, 1993) (declining to consider affidavit of expert witness that was not before magistrate) [citation omitted]; s*ee also Murr v. U.S.*, 200 F.3d 895, 902, n.1 (6th Cir. 2000) ("Petitioner's failure to raise this claim before the magistrate constitutes waiver."); *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendations are deemed waived.") [citations omitted]; *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994) ("By waiting until after the magistrate judge had issued its findings and recommendations [to raise its procedural default argument] . . . Respondent has waived procedural default . . . objection[].") [citations omitted]; *Greenhow v. Sec'y of Health & Human Servs.*, 863 F.2d 633, 638-39 (9th Cir. 1988) ("[A]llowing parties to litigate fully their case before the magistrate and, if unsuccessful, to change their strategy and present a different theory to the district court would frustrate the purpose of the Magistrates Act."), *overruled on other grounds by U.S. v. Hardesty*, 977 F.2d 1347 (9th Cir. 1992); *Patterson-Leitch Co. Inc. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988) ("[A]n unsuccessful party is not entitled as of right to de novo review by the judge of an argument never seasonably raised before the magistrate.") [citation omitted].